# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| JOHN PLATCHER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 04-cv-1442 |
| | ) | |
| v. | ) | |
| | ) | |
| HEALTH PROFESSIONALS, Ltd., et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## O P I N I O N   A N D   O R D E R

Before the Court is a Motion to Enforce Settlement [Doc. 176] filed by Plaintiff. Multiple State Defendants filed a Response [Doc. 185]. This matter was referred to U.S. Magistrate Judge Byron G. Cudmore for a Report and Recommendation. Judge Cudmore recommended that the Motion to Enforce be allowed. The multiple state defendants then filed a Response [Doc. 188] in which they objected to the Report and Recommendation. Plaintiff in turn filed a Memorandum in Opposition [Doc. 189]. For the following reasons, the Report and Recommendation is ADOPTED and the Motion to Enforce Settlement is GRANTED.

## I.
## BACKGROUND

The underlying action in this case involves a claim under 42 U.S.C. § 1983. Plaintiff brings his claim on behalf of the estate of Charles Platcher who was incarcerated at Menard Correctional Center. Plaintiff alleges that Defendants, who worked at Menard Correctional Center's Health Care Unit, stripped and beat Mr.

Platcher while he was incarcerated.  They then kept him in an extremely cold cell until he died of hypothermia.

Because the parties expressed an interest in settling this matter, Judge Cudmore mediated this case.  The mediation lasted from June 29, 2007 through December 10, 2007 and a great majority of the mediation took place over the phone and through facsimile.  Neither party disputes Judge Cudmore's description of the mediation which is as follows:

Plaintiff was represented during the mediation by counsel Peter Bustamante.  The main attorney contact for the State Defendants was Attorney Ed Huntley, chief legal counsel for the Illinois Department of Corrections ("IDOC"). During the course of the mediation, the scope of the discussions centered exclusively upon the amount of compensation to be paid.

On November 28, 2007, Judge Cudmore conducted a mediation in chambers.  The in person mediation again focused almost 100% on the degree of compensation to be paid.  Other minor issues concerning the time frame for payment and Defendants' willingness to present certain persons as witnesses in the remainder of the trial were also discussed.  It should be noted that Plaintiff's case is also pending against Health Professionals, Ltd., Dr. Baig, and Dr. Ahmed.  While the in person mediation moved the compensation discussions forward, full closure was not reached.

After the in person mediation, Judge Cudmore continued to work *ex parte* through telephone and facsimile to move the parties toward closure.  On December

10, 2007, a facsimile from Plaintiff's counsel was received by the undersigned as mediator advising that Plaintiff accepted the State Defendant's monetary offer and that a settlement with the Department of Correction Defendants had been reached. Plaintiff accepted the monetary offer in settlement exactly as the final offer made from the IDOC. Certain other minor issues were contained in Attorney Bustamante's notice to Judge Cudmore that a settlement had been reached. Those minor issues had been previously discussed with Judge Cudmore as mediator and communicated to Attorney Huntley.

Based upon the receipt of the facsimile from Attorney Bustamante, Judge Cudmore immediately contacted Attorney Huntley by telephone and advised that Plaintiff had accepted the State Defendants' offer and that the matter had been settled. Judge Cudmore faxed Attorney Huntley a copy of Plaintiff's December 10, 2007 acceptance. Judge Cudmore asked that an attorney be selected by Attorney Huntley to craft a settlement agreement. Judge Cudmore then entered its standard 30-day order (d/e 174) which indicated that a mediated settlement had been reached with IDOC.

At this point, it appears that things began to unwind. On January 28, 2008, Plaintiff filed the instant Motion to Enforce Settlement and Judge Cudmore learned for the first time that IDOC required some type of confidentiality clause in the settlement agreement. Judge Cudmore spoke with attorneys for IDOC and directed them to file a response to Plaintiff's Motion. In a rather ironic twist, IDOC filed an initial Response without requesting that their attached exhibits be filed under seal.

Thus, before Judge Cudmore corrected IDOC's mistake and directed IDOC to file a request to seal, the settlement agreement, which supposedly needs to be kept confidential, was temporarily made available in the public record by Defendants.

Nevertheless, Defendants filed their corrected Response and Judge Cudmore recommended that this Court grant the Motion to Enforce. Specifically, Judge Cudmore relied upon recent precedence in Dillard v. Starcon Intern., Inc., 483 F.3d 502 (7th Cir. 2007), in which the Seventh Circuit affirmed a decision to decline to enforce a confidentiality provision when the confidentiality provision was never discussed during negotiations in front of the magistrate judge. Judge Cudmore noted that the parties had never discussed the relevant confidentiality provisions during negotiations. Instead, negotiations focused almost entirely on the settlement amount. As a result, Judge Cudmore distinguished this case from Higbee v. Sentry Insurance Co., 253 F.3d 994 (7th Cir. 2001), where the Seventh Circuit enforced a confidentiality clause where negotiations had clearly involved issues of confidentiality. The Seventh Circuit recognized that confidentiality provisions are not material as a matter of law, and only if they have been a part of the negotiations should a court consider them to be a material provision.

Based upon this authority, Judge Cudmore held that there was an oral contract in place between the parties and the parties had not included the confidentiality agreement within the material terms discussed during the creation of that oral contract. As a result, Judge Cudmore recommended that the Motion to Enforce be granted.

4

## II.
## ANALYSIS

Defendants now make two arguments for rejecting Judge Cudmore's analysis: First, Defendants argues that including such confidentiality provisions are part of the custom and practice of agencies in Illinois and as a result, Plaintiff's counsel was constructively on notice that this was a material provision relevant to the settlement. And secondly, Defendants argue that, based upon conversations during the settlement negotiations, Plaintiff contemplated that a confidentiality clause would be included.

Defendants' first argument is that it is the custom and practice of Illinois state agencies to include such confidentiality clauses in their settlement agreements. Defendants do not cite any authority or reference any evidence to support this position. They simply state that two of Plaintiff's counsel formerly worked for the General Law Bureau of the Illinois Attorney General and as a result, they were aware of the policy.

First this argument is perfunctory and underdeveloped and should not be considered. Hershinow v. Bonamarte, 735 F.2d 264, 266 (7th Cir.1984). Defendants do not provide any internal memorandum or affidavits from the Attorney General's office to support their position that it is the policy of all Illinois state agencies to get a confidentiality agreement in each and every settlement. Furthermore, Defendants do not point to any authority which states that if a party's counsel has formerly been involved in similar litigation, then his client is considered

5

on notice regarding all the terms that are often included in settlement agreements that come out of that type of litigation.

Secondly, if this is the policy of all Illinois state agencies, then all counsel representing Illinois state agencies would be aware of the importance of bringing up terms during settlement negotiations that are material to the actual settlement. The Seventh Circuit decided <u>Dillard</u> in April of last year, long before the negotiations at bar commenced. There, our Appellate Court held that if a defendant wishes to tack on a confidentiality agreement and argue that the term is material long after a final agreement is reached on the settlement amount, then the defendant must have at least discuss the proposed confidentiality agreement during negotiations.[1] <u>Dillard</u>, 483 F.3d at 508-09.

Defendants' second argument is that Plaintiff actually contemplated a confidentiality clause in this case. Defendants do not dispute that a confidentiality clause was never discussed prior to the creation of the oral contract between the parties. Defendants only argue that after they entered into oral contract and after they presented their written draft at the direction of Judge Cudmore, Plaintiff's counsel behaved in a way that evidenced that his client had contemplated a confidentiality clause. Specifically, they state that Plaintiff's counsel told Defendants that "his clients wished to be able to discuss the terms and conditions of the settlement with their family members and certain friends (which would have

---

[1] In reality, if there are material terms that have not been included in the oral agreement, but will be brought to bear once drafting begins, then a party should make their oral offer contingent upon hammering out the written terms. <u>Dillard</u>, 483 F.3d at 508-09.

been prohibited by the clause as originally drafted), but that the plaintiffs and their attorneys had no interest in sharing details of the settlement with representatives of the media." [Doc. 188.] However, the fact that Plaintiff's counsel may have shown a willingness to take a less demanding confidentiality clause to his client after the parties had entered into an oral contract, does not evidence that Plaintiff himself had contemplated a confidentiality agreement at the time the oral contract was formed.

Furthermore, when Plaintiff's counsel first learned of the confidentiality agreement, Plaintiff's counsel specifically objected to the confidentiality agreement in the harshest terms. Plaintiff's counsel stated in an e-mail that "[i]f the defendants are going to insist on a confidentiality clause the plaintiff will ask for significant additional consideration." [Doc. 189, ex. B.] This does show that the confidentiality agreement came as a surprise to Plaintiff and was not a term that Plaintiff had contemplated at the time the oral agreement was made.

Accordingly, Plaintiff's arguments objecting to Judge Cudmore's report and recommendation are without merit. If a confidentiality agreement was a material term, it should have been raised during negotiations.

IT IS THEREFORE ORDERED that the Motion to Enforce Settlement is GRANTED and Judge Cudmore's Report and Recommendation is ADOPPTED in its entirety. This case is referred back to Magistrate Judge Cudmore for any additional proceedings.

ENTERED this  10th  day of April, 2008.    s/Joe Billy McDade
                                           Joe Billy McDade
                                           United States District Judge